STATE OF MICHIGAN
COURT OF APPEALS

UNPUBLISHED
April 18, 2017

*In re* WILLS/ABBY, Minors.

No. 334027
Wayne Circuit Court
Family Division
LC No. 14-515562-NA

Before: FORT HOOD, P.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Respondent E. Wills appeals as of right the trial court's order terminating his parental rights to the minor children, EW, JW, and DA, pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). Because the trial court did not clearly err by terminating respondent's parental rights, we affirm.

Respondent's children previously lived with their mother, E. Abby, in an unfit environment in which they were subjected to severe physical abuse and neglect. Respondent had little contact with the children when they resided with Abby. Respondent took custody of DA at the mother's request in January 2014, at which time respondent had not seen his children for months. Although DA's entire body was covered with welts and lacerations, respondent failed to obtain medical treatment or notify the police. He consulted a family friend, who notified Children's Protective Services (CPS). DA and respondent's three sons, MW, EW, and JW, were then removed from their mother's care and placed in care outside the home. The trial court terminated the mother's parental rights at the initial dispositional hearing, but ordered respondent to participate in reunification services. The case service plan required respondent to attend parenting classes, individual therapy, and parenting visits, and to secure suitable housing and a legal source of income.

Unfortunately, respondent's participation in services was inconsistent and he ultimately did not benefit from the services provided. Respondent attended approximately half of the parenting time visits offered to him. Although respondent interacted favorably with his children during visits, his interactions deteriorated over time. He did not appear to appreciate the severity of the abuse his children suffered in Abby's care; nor did he recognize the need to protect the children from further contact with their mother. For example, despite knowing that the children could not have contact with Abby, respondent asked the children to write letters to their mother and he had them participate in telephone calls with their mother, which upset the children because of the trauma they experienced in her care. In addition, when respondent agreed to discuss MW's inappropriate behavior in his residential treatment program, he began the

-1-

discussion by threatening to whip MW, which caused MW to run out of the room crying. Respondent completed parenting classes and attended individual therapy, but he did not appear to benefit from these services, as evinced by his failure to appreciate the harm suffered by his children. He also tested positive for marijuana during the proceedings. Respondent never established a stable home for his children, and instead lived a transient lifestyle. Respondent made little or no effort to find regular employment. He eventually obtained employment at a restaurant, but his income was insufficient to provide for the children.

In June of 2016, more than two years after the case began, respondent's rights to EW, JW, and DA were terminated pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). In discussing the statutory grounds for termination, the trial court found that respondent failed to obtain suitable housing and regular employment. The trial court was also critical of respondent's parenting of the children during visits, noting that respondent's interactions with the children had deteriorated as the case progressed and that respondent attempted to facilitate contact between the children and their mother, despite the extensive physical abuse inflicted by Abby. Given respondent's failure to benefit from services, his lack of housing, and the danger posed by contact with the children's mother, the trial court determined that termination would be in the best interests of EW, JW, and DA. Consequently, the trial court terminated respondent's parental rights to EW, JW, and DA.[1] Respondent now appeals as of right.

Respondent argues on appeal that petitioner failed to present clear and convincing evidence to support the statutory grounds for termination. Respondent emphasizes the positive steps he took during the case, noting that he completed parenting classes, that he showed some progress in his therapeutic goals, and that he was not homeless. According to respondent, although he was not compliant with services early in the proceedings, his compliance improved over time and termination of his parental rights was not warranted. We disagree.

In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review the trial court's decision for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356. A finding is clearly erroneous if we are left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[1] The trial court did not terminate respondent's parental rights to the eldest child, MW, because MW was strongly bonded to respondent and the court concluded that termination would not be in MW's best interests.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The grounds set forth in MCL 712A.19b(3)(c)(*i*) have been met "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). A parent's failure to participate in, and benefit from, a service plan can also constitute evidence that a parent will not be able to provide proper care and custody within the meaning of MCL 712A.19b(g)(3) and that there is a reasonable probability the child will be harmed if returned to the parent's home as set forth in MCL 712A.19b(3)(j). *In re White*, 303 Mich App 710-711.

In this case, respondent's children were placed in foster care and adjudicated temporary wards of the court because they were subjected to severe abuse and neglect in their mother's care. Respondent was not consistently involved with the children, and consequently failed to protect them from their abusive environment. Indeed, even when DA came into respondent's care in January of 2014, showing obvious physical signs of abuse, respondent failed to seek medical care and did not report the matter to authorities. A service plan was prepared to aid respondent in addressing issues relating to parenting, housing, and income; but, despite ample opportunity, respondent did not sufficiently benefit from these services to enable him to care for his children. For instance, respondent never obtained a stable home. He relied on his girlfriend and nieces for shelter. Respondent emphasizes that he was never actually homeless, but this fact is unimpressive given that he never established a stable home suitable for his children and he remains unable to provide them with even basic necessities. Respondent's employment was sporadic at best. Even if he would be able to obtain public assistance if his children were placed in his care, his lethargic attitude toward searching for regular and gainful employment cast doubt on his ability to marshal his resources to provide an adequate home.

Respondent also missed approximately half of his scheduled parenting visits. Further, he often showed poor judgment and poor appreciation of his children's psychological condition. Even though all of the children had been diagnosed with post-traumatic stress disorder due to the trauma they experienced in their mother's care, he believed that threatening MW with corporal punishment would motivate MW to behave better, failing to comprehend how this tactic would

only cause further trauma. Respondent also upset his children by attempting to facilitate contact with their mother through letters and phone calls. Although respondent completed parenting classes and some therapy, he did not benefit from these services. It is well established that it is not sufficient for a parent to merely participate in, or complete services; the parent must also benefit from those services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

Ultimately, respondent began these proceedings unable to provide a home for his children or protect them from their mother's abuse, and these circumstances were not markedly improved by the end of these proceedings. Respondent remained unable to provide proper care and custody, and the children would be at risk of harm if returned to his care because he was unable to provide a safe home and he was likely to reintroduce their mother into their lives. Accordingly, the trial court did not clearly err in finding that clear and convincing evidence supported termination under subsections 19b(3)(c)(*i*), (g), and (j).

Respondent also argues that the trial court erred in finding that termination of his parental rights was in his children's best interests. Specifically, respondent contends that he is bonded to all of his children and that the trial court's decision must be "confusing" to his children insofar as he remains able to see MW while his rights to EW, JW, and DA were terminated. In these circumstances, respondent maintains he should be able to pursue the return of *all* his children and that termination was not in the best interests of EW, JW, and DA. We disagree.

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds by a preponderance of the evidence that termination is in the child's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's best-interest decision is reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). In considering whether termination of parental rights is in the best interests of a child, a court may consider a variety of factors, including the existence of a bond between the child and the parent, the parent's ability to parent, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with his or her service plan, the parent's visitation history, the child's well-being while in care, and the possibility of adoption. *In re White,* 303 Mich App at 713-714. When there are multiple siblings involved in a case, "the trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App 35, 42; 823 NW2d 144 (2012). While it will often be in the best interests of the children to keep siblings together, "if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Id.*

In this case, the trial court considered the children's interests individually and, in view of their varying circumstances, determined that termination was in the best interests of EW, JW, and DA, but not in the best interests of MW. These findings were not clearly erroneous. Specifically, in analyzing the children's best interests, the trial court emphasized respondent's inability to provide a suitable home for the children as well as his apparent lack of understanding for the children's emotional needs as evinced by his facilitation of contact between the children and their mother. Nevertheless, the trial court found that termination of respondent's parental rights was not in MW's best interests because respondent's parental relationship was strongest with MW. MW was the eldest child and caseworkers believed that respondent could handle parenting MW. MW expressed a strong desire to be reunited with respondent. Unlike his

siblings, MW is placed in residential care as opposed to a foster home, and MW's fragile psychological state also was a special consideration with respect to preserving the parent-child relationship. Given the strong bond between MW and respondent as well as MW's unique circumstances, the trial court reasonably concluded that termination would not serve MW's best interests.

Simply because termination was not in MW's interests, it does not follow that the other children would be similarly served by continuation of respondent's parental rights or that the trial court's decision to allow continued contact with only MW is impermissibly "confusing" to the other children. The children were not residing together and had not done so for some time, and JW, EW, and DA were not in similar circumstances to MW. That is, although an emotional bond existed between respondent and JW and EW, they were ambivalent about reunification with respondent. The caseworker testified that respondent was frustrated by JW's difference in personality and had difficulty parenting JW. JW and EW were benefitting from therapy and from their stable foster care placements. Their need for stability and permanency justified the trial court's finding that termination was in their best interests.

In comparison, the youngest child, DA never established a bond with respondent and showed great reluctance to even interact with respondent during parenting visits. Although respondent was sympathetic to DA's reluctance to engage with him, he also upset her by his continued contact with her mother. On the other hand, DA had a beneficial placement with her foster mother, who had previously been involved in DA's care and who intended to adopt DA. Indeed, DA referred to her foster parents as "mom" and "dad." On these facts, the trial court did not clearly err in finding that termination of respondent's parental rights was in DA's best interests.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra